FILED
U.S. DISTRICT COURT
DISTRICT OF COLORADO

2b MAR 25 PM 1: 16

# UNITED STATES DISTRICT COURT

## DISTRICT OF COLORADO

Case No. <u>25-cv-02248-SKC-STV</u>

ALYSIA MURPHY
DAVID MCGHEE
NICOLE MURPHY
ALEYHA MURPHY

Plaintiffs,

v.
CHILDREN'S HOSPITAL COLORADO
DAVID BRUMBAUGH, M.D.
LORA BYRNE, DM, MBA, BSN, CNML
SARA YOUNG, M.D.
LISA JUSTUS
~~SERGEANT KEVIN MICHAEL RODIER~~
~~MATTHEW LEROUE, M.D.~~
~~CAMERON GUNVILLE, D.O.~~
~~LESLIE RIDALL, D.O.~~
~~REID WILKENING, M.D.~~
SARAH ROSS, R.N.
JENNIFER ROTH, MSN, R.N.
NILES ACKERSON
OFFICER J. CAMPBELL
OFFICER T. CHRISTENSEN
OFFICER B. BENNET
SERGEANT KEVIN MICHAEL RODIER
~~ANNIE SCHMECKPEPER~~
and
~~ADAMS COUNTY DEPARTMENT OF HUMAN SERVICES~~

Defendants.

. .

## AMENDED COMPLAINT AND JURY DEMAND
### [VERIFIED]

.

THE PLAINTIFF, Alysia Murphy, under oath, Individually and on behalf of Amarii Murphy, Minor, *Pro Se*, states the following complaint against the named Defendants Children's Hospital Colorado, David Brumbaugh, M.D., Lora Byrne, DM, MBA, BSN, CNML, Sara Young, M.D., ~~Matthew Leroue, M.D.~~, ~~Cameron Gunville, D.O.~~, ~~Leslie Ridall, D.O.~~, ~~Reid Wilkening, M.D.~~, Sarah Ross, R.N., Jennifer Roth, MSN, R.N., Niles Ackerson, Officer J. Campbell, Officer T. Christensen, ~~Annie Schmeckpeper~~, and ~~Adams County Human Services Department:~~

## I.   INTRODUCTION

1.   This civil action is for injunctive relief, and to recover compensatory and other damages as well as attorney's fees, expert fees, and litigation costs.

2.   The Plaintiff Aysia Murphy alleges she and her child, Amarii, were discriminated against at Children's Hospital Colorado (CHCO) on the basis of race and religion, and deprived of basic due process rights under the 1st (Freedom of Religion) and 14th (Due process and Equal Protection) Amendments to the U.S. Constitution.  Plaintiff alleges upon information and belief that the defendants engaged in a pattern of conduct, acted under color of state law by engaging as a willful participant in joint activity with the State or its agents, obtained significant aid from state officials in carrying out the permanent ban of Amarii Murphy's mother Alysia Murphy, his Aunt, Aleyha Murphy and Grandfather, David Mcghee. ~~the unconstitutional act of authorizing brain death testing on~~

2

~~the child without the consent of the mother of the child with a goal of terminating the life of Amarii.~~ The CHCO would not have succeeded in a permanent ban without the state official's authority, which was sufficient to convince a court of general jurisdiction not to act. ~~The county case worker in this case works closely with the Hospital to investigate the Plaintiff Alysia Murphy and her family, but failed to protect Amarii from harm by investigating the actions of the Hospital staff. The social worker falsified statements and reports to protect the Hospital and its staff.~~ The defendants, acting in concert, deliberately sought to deprive plaintiffs of their 5th and 14th Amendment rights of due process, life, liberty and happiness, and the minor child, Amarii, of life and all its benefits on the basis of racial and religious discrimination.

3

## II. PARTIES

3. Plaintiff Alysia Murphy is a resident of El Paso County, Colorado and the natural parent and guardian of Amarii Murphy, a 3 year old male child who is now deceased.

4. Defendant Children's Hospital Colorado (CHCO), is a Colorado non-profit corporation operating a hospital in Adams County, Colorado. Children's Colorado represents to the public as follows: "Our personalized care leads to miraculous things. That's why we're one of the Top 10 children's hospitals in the nation according to U.S. News & World Report. Here, it's different.™" Childrens Colorado website (link verified 9/6/25).

5. Defendant DAVID BRUMBAUGH, M.D., is the Chief Medical Officer of CHCO.

6. LORA BYRNE, DM, MBA, BSN, CNML, is the Director of Patient Care Services at CHCO.

7. SARA YOUNG, M.D., is a pediatric critical care medicine specialist who leads services for CHCO which include pediatric end of life care/autopsy review process and pediatric critical care medicine education.

4

8. ~~MATTHEW LEROUE, M.D., CAMERON GUNVILLE, D.O., LESLIE RIDALL, D.O., REID WILKENING, M.D.,~~ SARAH ROSS, R.N., JENNIFER ROTH, MSN, R.N., are various medical providers at CHCO in the Pediatric Intensive Care Unit (PICU);

9. NILES ACKERSON is head of security services at CHCO.

10. OFFICER J. CAMPBELL and OFFICER T. CHRISTENSEN are police officers for the City of Aurora, Colorado.

11. ~~ANNIE SCHMECKPEPER is a case worker at ADAMS COUNTY HUMAN SERVICES DEPARTMENT for Adams County, Colorado. ADAMS COUNTY HUMAN SERVICES DEPARTMENT is an agency for Adams County charged with responsibility for the protection and welfare of children, disabled, etc. (others).~~

## III. JURISDICTION

12. This court has jurisdiction pursuant to the provisions of 42 U.S.C. § 1983 and 1988, 28 U.S.C. § 1343, 28 U.S.C. § 1331, as well as pendent jurisdiction over state law claims.

13. Venue is proper in the District of Colorado pursuant to 31 U.S.C. § 3732(a) because the defendants can be found or transact business in this district.

IV. **GENERAL ALLEGATIONS**

14. This claim arises from breach of the Patient's Bill of Rights followed by a concerted effort to deprive Amarii Murphy (Amarii), a child born with severe medical needs, of his freedom and life following a tragic accident where he was severely injured. These infractions relate to care of Amarii that occurred at Children's Hospital of Colorado (CHCO) on 6/16/25, 7/18/25, 7/21/25 and 8/11/25 and legal actions taken by CHCO and its agents in Denver Juvenile Court on 8/21/25 and Adams County Juvenile Court on 9/4/25, wherein Ms. Murphy's decision-making authority was infringed upon, disregarded or repudiated by actions of CHOC staff, including the individual named defendants. The actions of permanently barring Amarii's family not only impacted medical decision making parents are entitled to make but also left a great deal of emotional trauma through grief being greatly distorted and used as a weapon to retaliate against medical neglect claims Alysia Murphy reported to the Aurora Police Department on 7/18/25 .

6

15.    Upon review of the police report, Plaintiff discovered that hospital staff told Aurora Police Department officers on or about August 11, 2025, that Plaintiff's son had already been declared brain dead. That statement was false. Plaintiff's son had not been declared brain dead on August 11, 2025, and brain-death testing had not yet been completed at that time. Plaintiff's son was not declared brain dead until August 21, 2025 per the death records obtained and hospital records. Plaintiff alleges that hospital staff provided materially false or misleading information to law enforcement about her son's condition, and that this false information contributed to police involvement, police reliance on the hospital's narrative, and the actions taken against Plaintiff.

16.    ~~In addition, CHOC staff have intentionally interfered with the right to transfer the patient to another facility for specialized care~~ CHCO intentionally inflicted emotional distress on the Plaintiff Alysia Murphy, David McGhee, Aleyha Murphy and Nicole Murphy. Ms. Murphy (Alysia) is a Black single mother, a devoted Christian and advocate for her severely disabled son Amarii's care and survival.

Alysia believes she has been subjected to discrimination and disparate treatment based on both her race and her son's disability. This treatment has directly impacted Alysia's ability to make informed decisions for Amarii, has interfered with his medical care, and has caused significant emotional distress to Alysia and her family.

17. Plaintiff Amarii Murphy suffered a catastrophic brain injury in Colorado Springs on June 12, 2025. An ambulance was called, and he was taken to UC Memorial Hospital, where he was placed upon mechanical support, and then transferred to Children's Hospital Colorado – Colorado Springs.

18. At Ms. Murphy's request, Amarii was transferred to Children's Hospital Colorado – Anschutz Medical Campus in Aurora, Adams County, Colorado (CHCO), where his condition remained unchanged. Although doctors at CHCO claimed Amarii was in the best place to receive care for his condition, Amarii has not achieved any neurologic recovery over the course of his admission to CHCO.

19. Sometime shortly following Amarii's admission to CHCO on June 12, 2025, a disagreement arose between Amarii's parent, Alysia Murphy, and CHCO and its medical staff,

Sara Young, as to the proper course of treatment for Amarii's diagnosed nonspecific severe diffuse encephalopathy ("brain injury").

20. ~~After their initial disagreement with CHCO, and based upon the recommendation of other providers, Alysia, who was vastly more familiar with her son's diagnosed brain injury, requested Amarii's discharge to have him transferred to a facility that would willingly provide the proper care.~~

21. ~~CHCO refused to discharge Amarii, utilizing subterfuge, and dissembling statements, ultimately depriving Amarii of his liberty and depriving Alysia of her right to determine the proper facility to care for her sick child.~~

22. ~~Without legal authority, CHCO continued to hold Amarii against his parent's will, thus essentially imprisoning him in the CHCO facility. CHCO refused to comply with Alysia's repeated requests to have Amarii discharged, ignored her religious objections to the form of treatment offered, and the patient's rights, and thwarted her attempts to have Amarii transferred to a more appropriate medical facility.~~

9

23.  Meanwhile, Amarii's health care demonstrated increasing hostility toward Alysia and her family while they were at Amarii's bedside.  Notifications of improper medical care and violations of physician's orders and obvious things such as failure to change a sweat-soaked pillow during EEG testing were ignored or met with hostile responses. Alysia, a black American (as is Amarii), felt that her providers, white Americans, were demonstrating bias and racially motivated discrimination.  They observed that they were being treated differently from other patients and their families in the PICU.

24.  At the time Plaintiff's minor son was taken off life support on 09/20/26, approximately seven Aurora Police Department officers were present inside and outside of the building, together with the hospital's security staff. Laura Byrne, David Brumbaugh, and other individuals responsible for Plaintiff's permanent ban and for false reports made to police were also present and remained there observing Plaintiff while her son was dying. Plaintiff had not seen her son in approximately two months and was given only about five minutes with him before life support was withdrawn. Instead of being afforded privacy in that

10

final moment, Plaintiff was forced to cry and grieve under the watch of the same people who had traumatized her, excluded her from her son, and used police involvement against her and reported false information to the Aurora Police Department.

25.     ~~On August 12, 2025, Amarii's EEG showed he still suffered from nonspecific severe diffuse encephalopathy and demonstrated "no change" in condition.~~

26.     On August 18, 2025, Alysia withdrew Medicaid authorization for CHCO and its providers.

27.     ~~On August 20, 2025, while Amarii continued to be imprisoned, in retaliation and as a show of force and control, CHCO unnecessarily petitioned the *Denver* juvenile court for authorization to conduct brain death (BD) testing on the grounds that Amarii was in "imminent danger" and the providers were not able to assess the degree of brain injury for purposes of ongoing care, after Alysia refused to consent to the BD testing.  In fact, CHCO providers consistently documented that Amarii's condition had not changed since his mid-June admission to CHCO. CHCO was deliberately circumventing their obligation to~~

allow the parent to have primacy in decision-making, utilizing an instrument of the state (juvenile court) as an asset to discriminate and deprive Alysia and Amarii of their civil rights. Similarly, CHCO used the caseworkers, Annie Schmeckpeper of the ACHSD as an asset to convince the state juvenile court not to take action to protect the rights and person of Amarii and Alysia. The ACHSD caseworker who interviewed Amarii's grandmother seemed be biased against Alysia and the family of Amarii and give preference to the CHCO version of events as if they had a close relationship and pattern of discounting the decision-making of parents of children in the NICU. Alysia found local news reports of other parents making similar claims in the past.

28. Given the absence of imminent danger to Amarii (his stable condition since mid-June), the late August petition to the juvenile court amounted to further imprisonment of Amarii to execute his death by termination of life supporting mechanical ventilation and medications was unreasonable, unwarranted and without excuse or justification legally, medically, or morally. CHCO would benefit financially from the termination of Amarii's life support, and avoid

12

~~possible repercussions if the improper care during his admission at CHCO became known by review of medical records at another facility.~~

**Religious Discrimination**

29. On June 14, 2025, during rounds at the Children's Hospital in Colorado Springs (CHCO-CoS), Dr. Sara Young, the attending physician, said that Amarii would not recover. Alysia's father and Amarii's grandfather, David McGhee, expressed the family's sincerely held religious beliefs to her. He said, "We want to wait to see what Jesus will do."

30. On June 16th, 2025, Dr. Sarah Young filed a complaint with the nursing manager (name unknown) and floor manager (name unknown) at CHCO-CoS against AMARII'S grandfather and mother without an apparent defined reason. The family never received anything explaining why, but it was clear to Alysia that it was done because they are Black and she was already upset that they were mentioning God.

31. On or about on July 18th, 2025, Alysia felt she was retaliated against after her father prayed over a family crying in the hallway and was told that they were obstructing other patients' care. Alysia believed they have

13

the right to pray with whomever we choose due to freedom of religion. Alysia's sister and father were barred from the hospital that same day.

32. On July 18th, after Alysia's father, David McGhee and sister Aleyha Murphy were barred from the hospital, she witnessed a staff member hovering outside Amarii's room. Every time she would speak to the nurse, she would look at Alysia with an angry expression, pacing with intentions of intimidating. Alysia felt she was treated as a threat instead of a mother who was concerned for her son's care.

33. On August 20, 2025, Matthew Leroue, M.D. called and discussed brain death testing with Alysia. She asserted her religious objection to it. Dr. Leroue ignored her objection, failed to record it in the record, and without her consent (in fact, misrepresenting he obtained consent) entered a DNR order.

**Racial discrimination.**

34. On July 21st, during a conversation with Dr. Lora Byrne (the PICU Director of patient care), Alysia directly expressed her concerns about how she was being treated differently because of her race.

14

35.    Alysia had a salmon colored sheet of card stock paper in which she wrote that she did not feel safe communicating with hospital staff, and only felt safe communicating with nurses and doctors about her son's treatment. The note mentioned the Patient Bill of Rights. Lora Byrne walked into the room, looked at the note and immediately turned red and her expression was hostile. (This note has been kept for evidence)

36.    Alysia calmly told Dr. Byrne: "I feel like my family and I are being discriminated against because of our skin color and for being Black."

37.    Instead of addressing Alysia's concern or engaging in respectful dialogue, Dr. Byrne's reaction was one of visible anger and hostility. Her face turned visibly red. She refused to respond verbally, and she abruptly ended the conversation without acknowledgment of Alysia's statement, proceeding to walk out of the room.

38.    Dr. Byrne's reaction was deeply alarming and confirmed Alysia's fear that her race was influencing how the hospital

personnel treated her, her family and most importantly, her son.

39. In Alysia's experience, a professional committed to equity and patient rights would have acknowledged her concern, documented it, and taken immediate steps to address possible discrimination instead of getting angry.

40. Dr. Byrne's silence and visible anger suggested bias and animosity, not neutrality.

41. Children's Hospital Colorado's PICU leadership is predominantly white with very little diversity. The first African American Doctor in the PICU and CHCO was a new hire in August 2025 from Children's hospital of Philadelphia.

42. The incident with Ms. Byrne is part of a larger, ongoing pattern of discriminatory behavior by hospital staff. Staff, including Michael Brubaugh, the Chief Medical Officer, have made statements implying I am "difficult" or "unreasonable" for advocating for her son — language that is often used to stereotype and silence Black women in professional and medical spaces.

43. After Alysia raised concerns about her son's treatment and being discriminated for her race, Dr. Byrne called the

16

police and filed a false report that led to her unlawful removal from the hospital by threat of force. Police reports, body cam footage and dispatch calls have been obtained by the plaintiff.

44. Alysia felt she was treated as a threat rather than a mother protecting her child, which echoes a broader societal pattern of criminalizing Black parents, particularly mothers, when they advocate for their children.

**Disability Discrimination**

45. ~~Dr. Gunville is Amarii's admitting physician at CHCO. Dr. Gunville has failed to accommodate Amarii's disability. Amarii was born with Cerebral Palsy and relies on a ventilator and other life-sustaining treatments. Instead of supporting his needs, hospital staff are prematurely ending his care by removing him from his ventilator — without parental consent and despite his ongoing signs of life and neurological activity.~~

46. ~~As recent as September 4, 2025, the grandmother of Amarii, Nicole Murphy, his regular CNA (in daily life outside the Hospital), has observed Amarii demonstrating spontaneous respirations on the monitors, which defeats a diagnosis of brain death. Rather than acknowledge these~~

17

objective findings and document them in the medical record, the medical providers at CHCO ignore the signs of life, obviously to facilitate their goal of terminating Amarii's life.

47. Alysia's feeling is that Amarii was treated as if his life was "less valuable" because of his disability.

48. In contrast, Alysia's requests for a transfer to Boston Children's Hospital and for advanced neurocritical care were delayed for 72 hours and denied without justification, while hospital staff repeatedly referenced "quality-of-life." Dr. Cameron Gunville and Dr. Leslie Ridall have mentioned to me that the only reason for him to be in the hospital was to be pronounced dead, although he has a treatable brain injury. This suggests bias and prejudice against both Amarii's disability and Alysia's role as a Black decision-making mother.

**Abuse of Process**

49. On or about July 18th, 2025, CHCO made a false police report against Plaintiff's father, and sister, who were taken into custody and escorted from the premises under threat of arrest by Officer J. Campbell (Officer ID #330464)(case # AP2025-138016, District 1). Plaintiff's father and sister

18

were subsequently barred from the Hospital premises and no longer able to provide comfort and companionship to Amarii during his confinement at CHCO.

50. On or about July 21, 2025, a false police report was filed by Lora Byrne, R.N. and and Plaintiff Alysia Murphy was taken into custody and escorted from the premises under threat of arrest by Officer Specialist T. Christensen (Officer ID #318667) responded (Case #AP25-140054, District 1). Alysia was subsequently barred by Dr. Brumbaugh from the Hospital premises and no longer able to provide comfort and companionship to Amarii during his confinement at CHCO. In her absence, the staff at CHCO failed to provide adequate informed consent disclosures and information to Plaintiff, and failed to obtain valid consent for procedures and treatment.

51. ~~On August 20, 2025, Matthew Leroue, M.D. entered a Do Not Resuscitate Order into the medical record that falsely claimed he had obtained the informed consent of Alysia to place it.~~

52. ~~On or about August 20th, 2025, CHCO pursued a court order in Denver juvenile court to override Alysia's religious objections to brain death testing, get state court~~

19

authorization under the Children's Code and to defeat her decision to wait and see how Amarii might heal through Jesus Christ. At the time of filing, CHCO was aware that the Denver Juvenile Court lacked jurisdiction, did not apply in the absence of a D&N petition, and was an improper venue. Alysia was given only 3 hours notice of a hearing and was forced to appear without an attorney. She felt there was a collusion between the Hospital and the Judge, both of whom who seemed to disregard and show hostility to Alysia's objections to proceeding without a lawyer and that the court lacked personal jurisdiction.

53. On September 4, 2025, CHCO opposed a petition filed in Adams County, Colorado Juvenile Court by Alysia Murphy to stay the proceedings and enjoin the Hospital from removing life support (mechanical ventilation and medications), and order CHCO to facilitate the transfer of Amarii to a hospital in New Jersey (which recognizes religious objections to death testing) chosen by Alysia. The Judge ordered a temporary stay to investigate the mother's claim of imminent harm to a child, and that Adams County Human Services Department (ACHSD) assign a caseworker to investigate possible abuse. The caseworker,

20

~~Annie Schmeckpeper and found no abuse and informed~~

~~Alysia, her mother, father and sister that the department has~~

~~a "policy that it doesn't investigate the actions of CHCO."~~

~~This policy violates the ACHSD obligation to protect~~

~~children in the County.  The Judge (Southerland)~~

~~determined that the Court lacked jurisdiction under the~~

~~Colorado Children's Code in the absence of a petition for~~

~~dependency and neglect, which can only be filed by the~~

~~Department of Human Services.~~

**Violation of Due Process Rights**

54.        Alysia felt there is racial bias in medical decision-making

and rights to transfer out of CHCO.  She observed that

other families, predominantly white families, were

provided with more options for second opinions, transfers,

and advanced testing.  In contrast, Alysia's requests for a

transfer to Boston Children's Hospital and for advanced

neurocritical care were delayed for 72 hours and denied

without justification.  ~~while hospital staff repeatedly~~

~~referenced "quality of life." Dr. Cameron Gunville and Dr.~~

~~Leslie Ridall have mentioned to me that the only reason for~~

21

~~him to be in the hospital was to be pronounced dead, although he has a signs of life and a treatable brain injury according to other specialists and research she has done. The Hospital and the ACHSD case worker referenced "google searches" done by the mother as a basis for her objections to lack of care and "denial of reality." There are numerous documented cases of children and adolescents recovering some function after being pronounced braid dead, which the Hospital staff refuses to acknowledge. Instead, the Hospital has a closed "Ethics Committee" meeting that merely supports the doctors decision-making authority.~~ This suggests bias and prejudice against both Amarii's disability and Alysia's role as a Black decision-making mother.

55. ~~CHCO had a policy of following the Colorado Declaration of Death Act, C.R.S. 12-240-140, as a basis for discontinuing life support to patients. The basis for an 'ethical' termination of life under the Act and per CHCO policy "when an individual has sustained irreversible cessation of all functions of the entire brain, including the brain stem" and "a determination of brain death must be made in accordance with *accepted medical standards."* In~~

22

this case, CHCO providers ignored clinical evidence of ongoing brain function (spontaneous breathing, reflexive actions, and other normal organ function as well as weight gain) documented in its own internal records, and as reported by family of Amarii, and instead declared Amarii "deceased" by virtue of the court authorized BD testing. CHCO then notified Alysia of the testing and informed her of the date and time that the mechanical ventilation sustaining his life would be removed. She was invited to come witness the termination of Amarii's life. Instead, Alysia has pursued legal action, including this filing.

56.    Under Colorado law, the primary decision-maker and required giver of 'informed consent' for specific treatment of a minor is the parent. See, 6 CCR 1011-1 Chap 02, part 6.6.6.1 (A)(1). See also, C.R.S. (1973) §13-20-301 (entire section repealed 1977). This regulation was effectively circumvented and ignored by CHCO and its use of the juvenile court, Aurora Police department enforcing a permanent ban as assets to subjugate parents of children imprisoned in its facilities.

57.    The actions and conduct of CHCO are violative of the Medicare and Medicaid Regulations and Requirements

23

including GPR §1.170 and <u>Elizabeth, No Patient or Resident Left Alone Act</u>. C.R.S 25-3-125. Additionally, 42 C.F.R 482.13 (h)["a patient or resident of a health-care facility may have at least one visitor of the patient of residents choosing during the patient's stay. (III) for a patient who is under eighteen years of age the parent or legal guardian of"] has been violated. Furthermore, these actions constitute negligence and negligence per se and intentional infliction of emotional distress under Colorado law and CHOC and the individuals perpetrators (named below).

**Description of Injury**

58.    ~~As a result of these actions, Amarii has needlessly suffered and/or been deprived of necessary medical and rehabilitative care.~~ Ms. Murphy has suffered extreme emotional distress and anxiety, sleep disorder, panic attacks and other bodily injury. Ms. Murphy has incurred substantial legal expenses to defend against the abuse of process by way of legal actions of CHCO.

59.    ~~The patient, Amarii Murphy, and his parent and guardian,~~ Alysia Murphy, has suffered economic and noneconomic losses, including medical and rehabilitative expenses, loss

24

of time, extreme physical and emotional pain and suffering, loss of enjoyment of life embarrassment, disfigurement and permanent disability.

60. This discrimination has caused severe emotional distress for Alysia and her family.

61. Alysia lives in constant fear that hospital staff may take steps to harm Amarii or interfere with his care.

62. Nicole Murphy, Amarii's grandmother was terrified for her safety, especially after being threatened by a hospital staff member, and had several panic attacks throughout the time frame of 2 months at CHCO.

63. Being removed from the hospital has stripped Alysia of her role as Amarii's protector, leaving her feeling powerless and traumatized.

64. The actions of the defendants has also caused a breakdown of trust between the decision-maker, Alysia, with the medical team, making collaborative care nearly impossible, to Amarii's detriment.

## V. CLAIM 1 FALSE IMPRISONMENT
### [ALL DEFENDANTS]

65. ~~Plaintiffs hereby incorporate by reference all prior and subsequent allegations as though fully set forth herein.~~

66. ~~This claim is brought by Alysia Murphy on behalf of Amarii Murphy and her own behalf against Children's Hospital Colorado, David Brumbaugh, M.D., Lora Byrne, DM, MBA, BSN, CNML, Sara Young, M.D., Matthew Leroue, M.D., Cameron Gunville, D.O., Leslie Ridall, D.O., Reid Wilkening, M.D., Sarah Ross, R.N., Jennifer Roth, MSN, R.N., Niles Ackerson, Officer J. Campbell, Officer T. Christensen, Annie Schmeckpeper, and Adams County Human Services Department.~~

67. ~~Amarii Murphy was confined to CHCO through threat of force or harm to Alysia Murphy, and his family members.~~

68. ~~The actions and conduct of CHCO were intentional acts to constrain Amarii Murphy to its health care facility, without legal justification or consent, and constitute false imprisonment.~~

69. ~~As a direct and proximate result of these false imprisonments at the hands of CHCO and its agents, Amarii, suffered the loss of his family's care, comfort and support; Alysia suffered mental pain, anguish and embarrassment concerning false accusations of medical~~

26

provider abuse and the resulting separation from her child. The overwhelming stress from these events has caused Alysia to suffer panic attacks and require emergency hospital admission, care and treatment. Furthermore, Alysia is suffering PTSD from the trauma of being removed from the bedside of her child under threat of arrest by the Aurora Police Department, another asset of CHCO used to effectively intimidate parents who don't 'go along' with provider recommendations for care and treatment.

70.     The actions and/or inactions of CHCO as plead herein caused or substantially contributed to grievous physical, emotional, and psychological injury to Alysia.

## V.     CLAIM 2-ASSAULT
[CHCO AND POLICE OFFICERS]

71.     Plaintiffs hereby incorporate by reference all prior and subsequent allegations as though fully set forth herein.

72.     This claim is brought by Alysia Murphy against Children's Hospital Colorado and its staff, which includes NILES ACKERSON of CHCO hospital security, and OFFICER J. CAMPBELL, and OFFICER T. CHRISTENSEN, and OFFICER B. BENNET, and SERGEANT KEVIN MICHAEL RODIER of the Aurora Police Department.

27

73. The actions of these defendants were intended to cause apprehension of harmful or offensive contact, and in fact, caused the creation of a reasonable apprehension of imminent harm or offensive contact, to the intended victim, Alysia.

74. As a direct and proximate result of such offensive actions, Alysia has suffered severe emotional distress, embarrassment, anxiety attacks, possible PTSD, loss of enjoyment of life and disability.

## ~~CLAIM 3-LACK OF INFORMED CONSENT~~
### ~~[CHCO PROVIDERS]~~

75. ~~Plaintiffs hereby incorporate by reference all prior and subsequent allegations as though fully set forth herein.~~

76. ~~This claim is brought by Alysia Murphy against Children's Hospital Colorado and its staff, which includes Lora Byrne, DM, MBA, BSN, CNML, Sara Young, M.D., Matthew Leroue, M.D., Cameron Gunville, D.O., Leslie Ridall, D.O., Reid Wilkening, M.D., Sarah Ross, R.N., and Jennifer Roth, MSN, R.N.~~

77.        ~~Reid Wilkening, M.D. was the attending physician at the time of brain death testing and responsible to ensure informed consent of the patient was properly obtained.~~

78.        ~~CHCO had a responsibility to ensure documentation of informed consent was recorded, and informed consent was obtained by the child's provider(s), before invasive testing was allowed to proceed.~~

79.        ~~With respect to the BD testing, (1) the physicians failed to comply with their duty to inform Alysia of the risks of a procedure, (2) a reasonable and prudent person (with similar religious beliefs to the plaintiffs) would not have consented to the procedure if properly informed, and (3) this failure to inform and subsequent procedure proximately caused an injury to the Amarii.~~

80.        ~~As a direct and proximate result of the BD testing, Alysia has been inhibited and unable to transfer Amarii to a facility for special care and treatment of her choosing.~~

81.        ~~As a direct and proximate result of such offensive actions, Alysia has suffered severe emotional distress, embarrassment, anxiety attacks, loss of enjoyment of life and disability.~~

## VI. CLAIM 4-INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
[ALL DEFENDANTS]

82.     Plaintiffs hereby incorporate by reference all prior and subsequent allegations as though fully set forth herein.

83.     This claim is brought by Alysia Murphy on behalf of herself and Amarii Murphy against Children's Hospital Colorado, David Brumbaugh, M.D., Lora Byrne, DM, MBA, BSN, CNML, Sara Young, M.D., Matthew Leroue, M.D., Cameron Gunville, D.O., Leslie Ridall, D.O., Reid Wilkening, M.D., Sarah Ross, R.N., Jennifer Roth, MSN, R.N., Niles Ackerson, Officer J. Campbell, Officer T. Christensen, Annie Schmeckpeper, and Adams County Human Services Department.

84.     The actions and conduct set forth herein was willful, wanton and intended to cause extreme emotional distress to the Plaintiff.

85.     The actions and conduct of the defendants as described herein are utterly intolerable in a civilized society such that it is considered "outrageous."

86.     As a direct and proximate result of outrageous conduct of defendants, plaintiff have suffered attorney's fees and litigation costs, severe emotional distress and anxiety,

30

embarrassment, loss of enjoyment of life, anguish and
disability.

## VII.    CLAIM 5-42 U.S.C. § 1983
[RELIGIOUS DISCRIMINATION-CHCO AND STAFF]

87.    Plaintiffs hereby incorporate by reference all prior and
subsequent allegations as though fully set forth herein.

88.    This claim is brought by Alysia Murphy on behalf of
herself and Amarii Murphy against Children's Hospital
Colorado and its staff, which includes Lora Byrne, DM,
MBA, BSN, CNML, Sara Young, M.D., Matthew Leroue,
M.D., Cameron Gunville, D.O., Leslie Ridall, D.O., Reid
Wilkening, M.D., Sarah Ross, R.N., and Jennifer Roth,
MSN, R.N.

89.    The harmful actions and conduct of the defendants was
religiously motivated toward the plaintiffs in violation of
state and federal laws against religious discrimination.

90.    As a direct and proximate result of religious discrimination,
plaintiffs have suffered attorney's fees and litigation costs,
severe emotional distress and anxiety, embarrassment, loss
of enjoyment of life, anguish and disability.

31

## VIII.    CLAIM 6-42 U.S.C. 1983
### [DUE PROCESS VIOLATIONS-ALL DEFENDANTS]

91.    Plaintiffs hereby incorporate by reference all prior and subsequent allegations as though fully set forth herein.

92.    This claim is brought by Alysia Murphy on behalf of herself and Amarii Murphy against Children's Hospital Colorado, David Brumbaugh, M.D., Lora Byrne, DM, MBA, BSN, CNML, Sara Young, M.D., ~~Matthew Leroue, M.D., Cameron Gunville, D.O., Leslie Ridall, D.O., Reid Wilkening, M.D.,~~ Sarah Ross, R.N., Jennifer Roth, MSN, R.N., Niles Ackerson, Officer J. Campbell, Officer T. Christensen, OFFICER J. CAMPBELL, and OFFICER T. CHRISTENSEN, and OFFICER B. BENNET, and SERGEANT KEVIN MICHAEL RODIER ~~Annie Schmeckpeper, and Adams County Human Services Department.~~

93.    The actions and conduct of defendants was intended to deprive the plaintiffs of their rights to due process, and to prevent, and did in fact prevent medical decision making for the minor's mother Alysia Murphy.

94.    As a direct and proximate result of racial discrimination, plaintiffs have suffered attorney's fees and litigation costs,

32

severe emotional distress and anxiety, embarrassment, loss of enjoyment of life, anguish and disability.

## IX.    CLAIM 7-42 U.S.C. § 1983
[RACIAL DISCRIMINATION-CHCO AND STAFF]

95.      Plaintiffs hereby incorporate by reference all prior and subsequent allegations as though fully set forth herein.

96.      This claim is brought by Alysia Murphy on behalf of herself and Amarii Murphy against Children's Hospital Colorado and its staff, which includes Lora Byrne, DM, MBA, BSN, CNML, Sara Young, M.D., Matthew Leroue, M.D., Cameron Gunville, D.O., Leslie Ridall, D.O., Reid Wilkening, M.D., Sarah Ross, R.N., and Jennifer Roth, MSN, R.N.

97.      The harmful actions and conduct of the defendants was racially motivated toward the plaintiffs in violation of state and federal laws against racial discrimination.

98.      The plaintiffs are members of a protected class as Black Americans.

99.      As a direct and proximate result of racial discrimination, plaintiffs have suffered attorney's fees and litigation costs,

33

severe emotional distress and anxiety, embarrassment, loss of enjoyment of life, anguish and disability.

## X.   CLAIM 8-42 U.S.C. § 1988
### [ATTORNEY'S FEES -ALL DEFENDANTS]

100.   Plaintiffs hereby incorporate by reference all prior and subsequent allegations as though fully set forth herein.

101.   This claim is brought by Alysia Murphy on behalf of herself and Amarii Murphy against Children's Hospital Colorado, David Brumbaugh, M.D., Lora Byrne, DM, MBA, BSN, CNML, Sara Young, M.D., Matthew Leroue, M.D., Cameron Gunville, D.O., Leslie Ridall, D.O., Reid Wilkening, M.D., Sarah Ross, R.N., Jennifer Roth, MSN, R.N., Niles Ackerson, Officer J. Campbell, Officer T. Christensen, Annie Schmeckpeper, and Adams County Human Services Department.

102.   This action was brought for the protection of all persons in the United States in their civil rights, and for their vindication, and exercised and enforced in conformity with the laws of the United States.

34

103.     Plaintiffs are entitled to an award of reasonable attorney's fee as part of the costs, as well as expert witness fees as part of the attorney's fee.

## XI.    CLAIM 9-JOINT AND SEVERAL LIABILITY
### [ALL DEFENDANTS]

104.     Plaintiffs hereby incorporate by reference all prior and subsequent allegations as though fully set forth herein.

105.     This claim is brought by Alysia Murphy on behalf of herself and Amarii Murphy against Children's Hospital Colorado, David Brumbaugh, M.D., Lora Byrne, DM, MBA, BSN, CNML, Sara Young, M.D., Matthew Leroue, M.D., Cameron Gunville, D.O., Leslie Ridall, D.O., Reid Wilkening, M.D., Sarah Ross, R.N., Jennifer Roth, MSN, R.N., Niles Ackerson, Officer J. Campbell, Officer T. Christensen, Annie Schmeckpeper, and Adams County Human Services Department.

106.     The defendants acted in concert at all times referenced herein, and as such, their liability should be joint and several.

## XII.    CLAIM 10-REQUEST FOR INJUNCTIVE RELIEF
### [ALL DEFENDANTS]

35

107. ~~Plaintiffs hereby incorporate by reference all prior and subsequent allegations as though fully set forth herein.~~

108. ~~This claim is brought by Alysia Murphy on behalf of herself and Amarii Murphy against Children's Hospital Colorado, David Brumbaugh, M.D., Lora Byrne, DM, MBA, BSN, CNML, Sara Young, M.D., Matthew Leroue, M.D., Cameron Gunville, D.O., Leslie Ridall, D.O., Reid Wilkening, M.D., Sarah Ross, R.N., Jennifer Roth, MSN, R.N., Niles Ackerson, Officer J. Campbell, Officer T. Christensen, Annie Schmeckpeper, and Adams County Human Services Department.~~

109. ~~Plaintiff has been informed by CHCO attorneys that Amarii's life supporting mechanical ventilation will be removed on September 11, 2025 at 09:30.~~

110. ~~Plaintiff and Amarii's grandfather, grandmother, and aunt are banned from CHCO facilities. As such, Amarii is being deprived of the comfort and companionship of his family at the time when CHCO intends to remove life support and extinguish his existence.~~

~~Plaintiff requests that this Court enter an order enjoining the defendants from interfering with the entry to the Hospital and PICU (Amarii's room) of Plaintiff Alysia Murphy, and Amarii's immediate family members, David McGhee, Nicole Murphy, and~~

36

~~Aleyha Murphy; that said order prohibit the CHCO and individual staff members or
employees named herein (Lora Byrne, DM, MBA, BSN, CNML, Sara Young, M.D.,
Matthew Leroue, M.D., Cameron Gunville, D.O., Leslie Ridall, D.O., Reid Wilkening,
M.D., Sarah Ross, R.N., and Jennifer Roth, MSN, R.N. as well as Niles Ackerson) from
discriminating against Amarii and his family in any way; that said order prohibit the
CHCO and individual staff members or employees from removing the mechanical
ventilator or taking any action intended or which reasonably is expected to facilitate
Amarii's death until the trial on the merits of this case.~~

## XIII.  PRAYER FOR RELIEF

WHEREFORE, the plaintiffs pray for injunctive relief as requested herein, and for an
award of general and compensatory damages to be assessed against the defendants, jointly and
severally, for each claim, as a result of their wrongful actions, as well as attorney's fees and
costs, including prejudgment and post-judgment interest, and such other and further relief as
allowed by law.

THE PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.

Signed and sworn to under penalty of perjury pursuant to the laws of State of Colorado and
United States.

Dated: 3/25/26                         By: _____
                                            Alysia Murphy

~~This pleading was prepared with the assistance of counsel:~~

~~DENVER INJURY LAW, LLC~~
~~James W. Avery, Colo Atty Reg. 13037~~
~~Denver Injury Law, LLC~~
~~201 Columbine Street, Suite 150 #6888~~

37

Denver, Colorado 80206
Ph. (303) 840-2222
Fax: (303) 328-2976
denverinjurylaw.us@gmail.com