**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Lead Civil Action No. 25-CV-02248-SKC-STV
*Consolidated with Case No.:* 25-CV-02510-SKC-STV

ALYSIA MURPHY, *Pro Se,*

      Plaintiff,

v.

NILES ACKERSON;
OFFICER B. BENNET;
DAVID BRUMBAUGH, M.D.;
LORA BYRNE, DM, MBA, BSN, CNML;
OFFICER J. CAMPBELL;
CHILDREN'S HOSPITAL COLORADO;
OFFICER T. CHRISTENSEN;
SERGEANT KEVIN MICHAEL RODIER;
JENNIFER ROTH, MSN, R.N.;
AMY ROULF; and
SARA YOUNG, M.D.,

      Defendants.

---

**DEFENDANT CHILDREN'S HOSPITAL COLORADO'S
MOTION TO DISMISS**

---

Defendants Children's Hospital Colorado, Niles Ackerson, David Brumbaugh,

Lora Byrne, Jennifer Roth, and Amy Ruoff[1] (collectively, "CHCO Defendants"), by

and through undersigned counsel, respectfully move this Court to dismiss Plaintiff's

---

[1] The proper spelling of Defendant Roulf's last name is Ruoff.

Fourth Amended Complaint [ECF No. 130] ("FAC") with prejudice and, as grounds therefor, it is stated as follows:

## CERTIFICATE OF CONFERRAL

The parties conferred about the relief requested herein via email on June 11, 2026 and via phone call on June 15, 2026. The CHCO Defendants expressed their positions that they are not state actors, that the state action allegations are insufficient, that supplemental jurisdiction over the state law claims would not be appropriate, and that there are pleading deficiencies in Plaintiff's state law claims. Plaintiff disagreed and opposes this motion.

## CERTIFICATION RE: USE OF GENERATIVE ARTIFICIAL INTELLIGENCE

Undersigned counsel certifies that generative artificial intelligence was not used to draft this filing.

## INTRODUCTION

The underlying circumstances surrounding this case are undeniably heartbreaking. When Plaintiff's child, Amarii Murphy, arrived at Children's Hospital Colorado on June 12, 2025, he was deceased after drowning at his home earlier that day. Each of the CHCO Defendants recognizes this situation as a tragedy, and while their sympathies continue to be with Plaintiff and her family, the Federal Rules of Civil Procedure's pleading requirements cannot be replaced by sympathy, nor can sympathy create causes of action where none exist.

More specifically, Plaintiff's FAC asserts numerous claims under 42 U.S.C. § 1983 against the CHCO Defendants, a derivative 42 U.S.C. § 1988 attorney's fees claim, and two state law tort claims. Despite being on her fourth attempt to do so, the FAC still contains no plausible allegations establishing that any of the CHCO Defendants acted under color of state law in order to establish a claim for relief under § 1983. To the contrary, the FAC (a) contains conclusory allegations, (b) inappropriately asserts collective allegations against the CHCO Defendants by lumping them together, as opposed to making clear "exactly *who* is alleged to have done *what* to *whom*" as required, or (c) asserts allegations of conduct that the Tenth Circuit, under closely parallel facts, has already found to be insufficient to establish state action. In fact, multiple named defendants are not referenced in *any* of the specific factual allegations in the body of the FAC. For these reasons, each of Plaintiff's § 1983 claims (and the derivative §1988 claim) fail as a matter of law and should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

If these federal claims are dismissed, the only claims that remain are the state law claims of assault (claim two) and intentional infliction of emotional distress (claim four).[2] Since no basis for federal jurisdiction would remain at that point, and

---

[2] Plaintiff has stricken claims one (false imprisonment), three (lack of informed consent), and ten (request for injunctive relief) from her FAC. Claim nine purports to assert a claim for "joint and several liability." *See* FAC, Section XI. Because joint and several liability is not an independent claim for relief or cause of action and instead is a legal doctrine on how damages are allocated among defendants if liability is otherwise established, the CHCO Defendants do not spend time addressing the same in this Motion and respectfully request that this "claim" also be dismissed with

because these two claims similarly fail to meet the plausibility pleading standard, the Court should decline to exercise supplemental jurisdiction and dismiss these claims as well.

For the reasons described more fully below, the CHCO Defendants respectfully request that the Court dismiss all claims asserted against them and grant such further relief as the Court deems just and proper.

## LEGAL STANDARD

Under Fed. R. Civ. P. 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While a pro se litigant's pleadings "are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers", it is not "the

---

prejudice. *See, e.g.*, Wyles v. Sussman, No. 21CA1492, 2023 WL 12057108, at *4 n.4 (Colo. App. Mar. 20, 2023) ("Wyles denominated his joint and several liability as his eleventh 'claim.' … It is not a claim for relief; instead, it is a theory of liability for damages.")

4

proper function of the district court to assume the role of advocate for the pro se litigant." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). A plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

Moreover, under Fed. R. Civ. P. 8, "the burden rests on ... [Plaintiff] to provide fair notice of the grounds for the claims made against each of the defendants." *Robbins*, 519 F.3d at 1250. Courts routinely grant motions to dismiss when a complaint "use[s] ... either the collective term 'Defendants' or a list of the defendants named individually but with no distinction as to what acts are attributable to whom," because "it is impossible for any of these individuals to ascertain what particular unconstitutional acts they are alleged to have committed." *Id.*

## ARGUMENT

### I.    Plaintiff Has Failed To State A § 1983 Claim Because The FAC Does Not Plausibly Allege Action Under Color Of State Law.

Plaintiff asserts three claims under 42 U.S.C. § 1983 (claims five through seven), and a derivative claim under 42 U.S.C. § 1988 (claim eight) for attorney's fees. To state a claim under § 1983, Plaintiff must establish that (1) she was "deprived of a right secured by the Constitution or laws of the United States"; and (2) "the alleged deprivation was committed under color of state law." *Barnett v. Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C.*, 956 F.3d 1228, 1235 (10th Cir. 2020) (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999)). Because § 1983 is a "vehicle[] for imposing personal liability on government officials ... 'it is

particularly important' that plaintiffs 'make clear exactly *who* is alleged to have done *what* to *whom, ...* as distinguished from collective allegations.'" *Pahls v. Thomas*, 718 F.3d 1210, 1225 (10th Cir. 2013) (internal citations omitted). A plaintiff "must do more than show that their rights 'were violated' or that 'defendants,' as a collective and undifferentiated whole, were responsible for those violations." *Id.* at 1228. Instead, "it is incumbent upon a plaintiff to 'identify *specific* actions taken by *particular* defendants' in order to make out a viable § 1983 … claim." *Id*. at 1226. *See also Brown v. Montoya*, 662 F.3d 1152, 1165 (10th Cir. 2011) ("The Complaint refers to actions of 'Defendants,' but that is not sufficient to show how Secretary Williams 'might be individually liable for deprivations of [Mr. Brown's] constitutional rights.'").

The second element to establish a § 1983 claim (i.e., that the constitutional deprivation was committed under color of state law), is fatal to Plaintiff's claims. By alleging that the CHCO Defendants engaged in joint activity, Plaintiff's FAC implicitly acknowledges that the CHCO Defendants are not state actors. To the contrary, all but one of the CHCO Defendants are private parties,[3] and as the Tenth

---

[3] The one exception to this fact (which Plaintiff's FAC neither mentions nor addresses, but the CHCO Defendants believe they should raise) pertains to Defendant Brumbaugh, who, while technically employed by the University of Colorado School of Medicine, serves as Chief Medical Officer of CHCO and the only allegations relating to him in the FAC are tethered to his position as CMO. Specifically, there are three allegations made against Dr. Brumbaugh in Plaintiff's FAC: (1) he was responsible for "barr[ing]" Plaintiff from CHCO and for the "false reports" made to police; (2) he was present when Plaintiff alleges mechanical support for Amarii was removed; and (3) he made statements "implying" Plaintiff is "difficult" or "unreasonable". FAC ¶¶ 24, 42, 50. Not only are these allegations insufficient to survive this Motion due to their conclusory nature (and the fact that they fail to plausibly allege racial or

Circuit has recognized, the "under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." *Barnett*, 956 F.3d at 1235 (internal citations omitted). Thus, Plaintiff's § 1983 claims can only survive if she plausibly alleges facts demonstrating that **each** of the CHCO Defendants' conduct is "fairly attributable to the State." *Id.* (internal citations omitted). But the only state action allegations raised by Plaintiff are either conclusory or involve conduct that the Tenth Circuit, in closely analogous cases, has already held is insufficient to establish state action. For instance, in paragraph 2 of her FAC, Plaintiff asserts that "**the defendants** … acted under color of state law by engaging as a willful participant in joint activity with the State or its agents, obtained significant aid from state officials in carrying out the permanent ban of Amarii Murphy's mother, Alysia Murphy, his Aunt, Aleyha Murphy and Grandfather, David Mcghee." Not only is this allegation conclusory, but it also fails to make clear *who* is

---

religious discrimination), but they are problematic for two additional reasons. First, with respect to the federal claims asserted by Plaintiff against Dr. Brumbaugh, Dr. Brumbaugh is protected by the doctrine of qualified immunity. *See, e.g.*, *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Moreover, because Plaintiff has not (and cannot) demonstrate that Dr. Brumbaugh "violated a statutory or constitutional right" **and** that "the right was 'clearly established' at the time of the challenged conduct," Plaintiff's federal claims should be dismissed. *Quinn v. Young*, 780 F.3d 998, 1004 (10th Cir. 2015) (internal citations omitted). Second, with respect to Plaintiff's two state law tort claims asserted against Dr. Brumbaugh, Plaintiff failed to file the requisite notice under the Colorado Governmental Immunity Act ("CGIA"). *See* C.R.S. § 24-10-109 (requiring written notice of tort claims within 182 days after discovery of the injury and providing that "failure of compliance shall forever bar any such action.") For these reasons, each of Plaintiff's state claims should also be dismissed against Dr. Brumbaugh.

alleged to have done *what* to *whom*, in violation of Tenth Circuit precedent. *Pahls*, 718 F.3d at 1225; *Brown*, 662 F.3d at 1165.

Plaintiff's remaining state action allegations are that (1) the CHCO Defendants "used police involvement against her and reported false information to the Aurora Police Department"; that (2) "hospital staff provided materially false or misleading information to law enforcement about her son's condition, and that this false information contributed to police involvement, police reliance on the hospital's narrative, and the actions taken against Plaintiff"; (3) "CHCO made a false police report against Plaintiff's father, and sister, who were taken into custody and escorted from the premises under threat of arrest by Officer J. Campbell"[4]; and that (4) "Dr. Byrne called the police and filed a false report that led to her [Plaintiff's] unlawful removal from the hospital by threat of force." FAC at ¶¶ 15, 24, 43, 49. But the Tenth Circuit has already recognized that a private party does not become a state actor merely because law enforcement receives, investigates, or acts upon information supplied by that party.

To the contrary, in *Carey v. Continental Airlines Inc.,* 823 F.2d 1402, 1404 (10th Cir. 1987) and *Lee v. Town of Estes Park,* 820 F.2d 1112, 1115 (10th Cir. 1987), the Tenth Circuit held that citizens who made complaints to police officers that resulted in arrests or charges were not state actors. Moreover, in *Barnett*, the Court held that the mere allegation that the defendants filed a false threat report was not

---

[4] This allegation also does not include any mention of the Plaintiff.

enough because the plaintiff "must specifically plead facts tending to show agreement and concerted action" and "furnishing information to law enforcement officers, without more, does not constitute joint action under color of state law. Rather, joint action arises only when an officer's decision to initiate an arrest or a prosecution was not independent of a private party's influence." 956 F.3d at 1235 (internal citations omitted). In fact, "the mere acquiescence of a state official in the actions of a private party is not sufficient." *Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442, 1453 (10th Cir. 1995).

For these reasons, Plaintiff's § 1983 claims should be dismissed with prejudice, and because claim eight asserted under § 1988 is wholly derivative of Plaintiff's § 1983 claims, it should also be dismissed.

## II. <u>Because The FAC Fails To Make Any Factual Allegations Against Multiple Named Defendants, Those Defendants Should Be Dismissed From The Case.</u>

The FAC is entirely devoid of any specific mention of Amy Ruoff,[5] Jennifer Roth, or Niles Ackerson outside of naming them as defendants, mentioning that they are staff or employees of CHCO, and noting that certain claims are being asserted against them. For example with respect to "claim two, assault," at paragraph 72, Plaintiff notes that this claim is being asserted against "Children's Hospital Colorado

---

[5] Per ECF No. 147, "Plaintiff previously identified Amy Roulf as Sarah Ross. Plaintiff [] learned that the correct name is Amy Roulf who is an employee of Children's Hospital Colorado." As noted above, the correct spelling of this Defendant's name is Amy **Ruoff**. Per ECF No. 150, Sarah Ross has been removed as a Defendant and replaced with Amy Ruoff as a named defendant.

and its staff, which includes Mr. Ackerson of CHCO hospital security" (in addition to four officers of the Aurora Police Department), and at paragraph 73, Plaintiff states: "[t]he actions of these defendants were intended to cause apprehension of harmful or offensive contact, and in fact, caused the creation of a reasonable apprehension of imminent harm or offensive contact, to the intended victim, [Plaintiff]." Yet, nowhere in the FAC is there even a single allegation about Mr. Ackerson's actions or intentions—there's no factual allegation *at all* about Mr. Ackerson in the FAC.

Because there are also no specific allegations raised against Mr. Ackerson with respect to the other claims asserted against him (i.e., claim four, IIED; claim six, due process violations under § 1983; and claim eight, attorney's fees under § 1988), he should be dismissed as an individually named Defendant. In addition, the FAC does not include a single allegation referencing Ms. Ruoff[6] or Ms. Roth. Ms. Ruoff and Ms. Roth should also not be party to this lawsuit. The CHCO Defendants respectfully request that Mr. Ackerson, Ms. Ruoff, and Ms. Roth be dismissed from this case.

### III.    In the Alternative, Even If The FAC Established Joint Activity With the State, the Remaining Allegations Do Not Pass Muster.

Due to the conclusory, generalized, and innocent nature of the FAC's remaining allegations, Plaintiff's FAC is insufficient to survive CHCO's Motion to Dismiss.

---

[6] The CHCO Defendants have construed all references to "Sarah Ross" to mean Ms. Ruoff, and still, the only time the name Sarah Ross appears is when Plaintiff lists the names of whom each claim is asserted against.

For example, the allegations regarding racial discrimination at paragraphs 34 through 44 are that after Plaintiff allegedly told Dr. Byrne that she felt her family and she were being discriminated against on the basis of race, Dr. Byrne's "face turned visibly red" and she didn't respond and walked out of the room. Without any further support, Plaintiff alleges that this "reaction was deeply alarming and confirmed Alysia's fear that her race was influencing how the hospital personnel treated her, her family and most importantly, her son" and that because Dr. Byrne did not act how Plaintiff wanted her to, by "acknowledg[ing] her concern, document[ing] it, and tak[ing] immediate steps to address possible discrimination," she concluded that "Dr. Byrne's silence and visible anger suggested bias and animosity, not neutrality." FAC at ¶¶ 38-40.  Plaintiff goes on to say that because CHCO's PICU leadership is "predominantly white," and had only hired the first African American doctor in August of 2025, and because the Chief Medical Officer at CHCO had made statements "implying" Plaintiff is "difficult" or "unreasonable" this means she was discriminated against because of her race. *Id.* at ¶¶ 41-42. Not only are these allegations wholly insufficient to establish race discrimination, but they certainly fall far short of establishing her ninth claim for relief under § 1983 of racial discrimination, which requires state action. Her only attempt to try to connect these allegations to state action relate to timing: "After Alysia raised concerns about her son's treatment and being discriminated for her race, Dr. Byrne called the police and filed a false report that led to her unlawful removal from the hospital by threat of

11

force." FAC at ¶ 43. As noted in Section I, providing information to the police falls far short of establishing state action under Tenth Circuit precedent.

As discussed in the next section, the race discrimination allegations are far from the only place where Plaintiff's FAC falls short of the plausibility pleading standards.

### IV. The Court Should Decline To Exercise Supplemental Jurisdiction Over The Remaining State Law Claims, Which, In Any Event, Fail To State A Plausible Claim For Relief.

If the Court dismisses Plaintiff's federal claims, the only remaining claims are Plaintiff's state law claims of intentional infliction of emotional distress ("IIED") and assault. The Court should decline to exercise supplemental jurisdiction under 28 U.S.C. § 1367, particularly where Plaintiff has failed to plausibly allege such claims.

For example, Plaintiff's IIED claim requires Plaintiff to establish that "(1) the defendant engaged in extreme and outrageous conduct; (2) the defendant did so recklessly or with the intent of causing the plaintiff severe emotional distress; and (3) the conduct actually caused the plaintiff severe emotional distress." *Stalder v. Colorado Mesa University*, 551 P.3d 679, 686 (Colo. App. 2024). "Although the question whether conduct is outrageous is generally one of fact to be determined by a jury, it is the initial responsibility of a court to determine whether reasonable persons could differ on the question." *McCarty v. Kaiser–Hill Co., L.L.C.*, 15 P.3d 1122, 1126 (Colo. App. 2000). The level of outrageousness required is "extremely high." *Stalder*, 551 P.3d at 686 (internal citations omitted). In fact, "[l]iability can be sustained only

when the defendant's conduct toward the plaintiff was 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Id.* (internal citations omitted).

As pertinent to Plaintiff's allegations, Colorado law imposes several limitations on claims for IIED. First, there is no basis for recovery where the alleged conduct was directed at a third party or occurred outside the plaintiff's presence. *Bradshaw v. Nicolay*, 765 P.2d 630, 632 (Colo. App. 1988). Second, a defendant cannot be held liable for emotional distress where the defendant has done no more than insist upon his or her legal rights in a permissible manner, even if it is known that such conduct will cause distress. See Restatement (Second) of Torts § 46 cmt. g; see also CJI 23:5 (recognizing, for example, eviction or arrest as exercises of legal rights that do not give rise to liability). Finally, Colorado courts have repeatedly rejected attempts to "rehash" or "repackage" discrimination claims as IIED claims, holding that such allegations, standing alone, are insufficient to establish the extreme and outrageous conduct required for the tort. *Stalder*, 551 P.3d at 687. To hold otherwise would improperly transform every discrimination claim into a claim for intentional infliction of emotional distress. *Id.*; *see also Bigby v. Big 3 Supply Co.*, 937 P.2d 794, 800 (Colo. App. 1996) (warning that such an approach would extend the tort beyond its intended bounds).

Plaintiff's IIED allegations all fall into one or more of the three categories described above and all stem from (1) the alleged "barring" of Plaintiff, her sister, and her father from CHCO after Plaintiff's son had died; and (2) the fact that various CHCO Defendants were present at the time Plaintiff alleges mechanical support for Amarii was removed. *See, e.g.*, FAC at ¶¶ 2, 14, 16, 24, 49, 50, 57-60, 63.  First and foremost, all allegations related to Plaintiff's family members, including that such alleged actions "inflicted emotional distress" upon them at paragraph 16 fail under *Bradshaw* because they were not directed at Plaintiff. Second, all allegations that the CHCO Defendants' "**discrimination** … caused severe emotional distress for [Plaintiff] and her family" fail under *Stalder. See, e.g.*, FAC at ¶ 60 (emphasis added). Third, Plaintiff's FAC does not allege that any of CHCO Defendants acted with the intent to cause, or in reckless disregard of the likelihood of causing, severe emotional distress. In fact, outside of conclusory allegations, the FAC does not include a single allegation showing that the CHCO Defendants subjectively intended to cause Plaintiff severe emotional distress.

Finally, even accepting Plaintiff's allegations as true, they fail to establish the "extremely high" level of outrageousness required to create liability for IIED. *See, e.g., Reigel v. SavaSeniorCare L.L.C.*, 292 P.3d 977, 991 (Colo. App. 2011) (evidence that nursing facility's employees allegedly (1) refused to send Plaintiff's husband to the hospital or have him evaluated despite Plaintiff's requests; (2) responded to Plaintiff's requests in a manner that made her feel like she was "going crazy" and

14

"totally overreacting"; (3) failed to check on Plaintiff's husband for almost two hours on the last day he was at the facility prior to passing away; and (4) falsified an entry on Plaintiff's husband's chart was not sufficient to create a jury question on outrageousness.); *see also Humana of Ky., Inc. v. Seitz,* 796 S.W.2d 1, 3–4 (Ky. 1990) (finding that a nurse's conduct was not extreme and outrageous where she delayed responding to the plaintiff's room, told plaintiff to "shut up" though she was distressed after delivering a stillborn baby, and told plaintiff that the baby would be disposed of in the hospital.) For these reasons, Plaintiff's IIED claim should be dismissed with prejudice.

Plaintiff's assault claim allegations similarly fail to meet the plausibility pleading standards. The FAC makes it very difficult to determine what allegations are meant to support the assault claim, particularly because paragraphs 71-74 improperly constitute a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. The assault claim should fail for this reason alone. However, Plaintiff's FAC is also devoid of any of the necessary elements to establish assault under Colorado law. Specifically, the following elements must be established: "(1) the defendant acted either with the intent of making a contact with the person of the plaintiff or with the intent of putting the plaintiff in apprehension of such a contact; (2) the plaintiff was placed in apprehension of an imminent contact with his or her person by the conduct of the defendant; and (3) such contact was or appeared to be harmful or offensive." *Adams v. Corrections Corp. of America*, 187 P.3d 1190,

1198 (Colo. App. 2008); *see also* CJI 20:1 (requiring the contact for assault claims to be "physical"). The FAC is devoid of any allegation that any of the CHCO Defendants' conduct put Plaintiff in apprehension of an imminent physical contact, let alone that any such contact was intended. *See, e.g.*, ¶ 32 (alleging that a nurse would look at Plaintiff "with an angry expression, pacing with intentions of intimidating," – not that the nurse put Plaintiff in apprehension of any form of physical contact or intended to physically contact her).

## CONCLUSION

For the reasons set forth herein, the CHCO Defendants respectfully request that all federal claims against them be dismissed with prejudice and that the Court decline to exercise supplemental jurisdiction over the remaining state law claims.

Respectfully submitted this 15th day of June, 2026.

HALL, RENDER, KILLIAN, HEATH, & LYMAN, P.C.

*s/ Meghan E. Pound*
Meghan E. Pound
Lindsay K. McManus
999 17th Street, Suite 800, Denver, CO 80202
303-557-2121 / mpound@hallrender.com
303-802-1293 / lmcmanus@hallrender.com

*Attorneys for Children's Hospital Colorado,*
*Niles Ackerson, David Brumbaugh, Lora Byrne,*
*Jennifer Roth, and Amy Ruoff*

16

**CERTIFICATE OF SERVICE**

The undersigned certifies that on June 15, 2026, a true and correct copy of the foregoing was electronically filed via CM/ECF, and was served upon to the following:

Alysia Murphy
110 Bell Tower Heights, Apt. 302
Colorado Springs, CO 80916
alysiamurphymsu@gmail.com
*Pro Se Plaintiff*

John L. Conklin
Deann S. Zenisek
CONKLIN CARDONE & RUTBERG, PC
3773 Cherry Creek North Drive, Suite 680W
Denver, Colorado 80209
jconklin@CCRlawyers.com
dzenisek@CCRLawyers.com
*Counsel for Sara Young, M.D.*

Gillian Fahlsing
Alexander Norris
OFFICE OF THE AURORA CITY ATTORNEY
15151 E. Alameda Parkway, Ste. 5300
Aurora, Colorado 80012
gfahlsin@auroragov.org
anorris@auroragov.org
*Counsel for Officer B. Bennett, Officer J. Campbell, Officer T. Christensen, and Sergeant Kevin Micheal Rodier*

/s/Amy M. Graner
Amy M. Graner, Legal Administrative Assistant

17